UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

UBER TECHNOLOGIES, INC.

    *Plaintiff,*

    -against-

WINGATE, RUSSOTTI, SHAPIRO, MOSES,
& HALPERIN, LLP, JAY WECHSLER,
BANILOV & ASSOCIATES, P.C., NICK
BANILOV, THE LAW OFFICE OF DOMINICK
W. LAVELLE d/b/a LAVELLE LAW FIRM,
EMILY K. LAVELLE, MICHAEL GERLING,
GERLING INSTITUTE, LEONID REYFMAN,
AND PAIN PHYSICIANS NY PLLC

    *Defendants.*

_____

**Case No: 1:25-cv-00522-VMS**

 

**DEFENDANTS MICHAEL GERLING AND GERLING INSITUTE'S MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS**

Aaron H. Pierce
PIERCE & KWOK LLP
*Attorney for Defendant(s) Michael Gerling
& The Gerling Institute*
299 Broadway, Suite 1405
New York, NY 10007
(212) 882-1752
aaron.pierce@piercekwok.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................5

STATEMENT OF RELEVANT FACTS ............................................................................6

LEGAL STANDARD ......................................................................................................11

ARGUMENT ...................................................................................................................14

   I.    Uber Lacks RICO Standing ................................................................................. 15

      a.   Uber Fails to Properly Allege Causation ...................................................15

      b.   Uber's Claims Are Unripe Because Its Damages Are Not Clear and Definite ..............18

      c.   The Alleged "Bribes" Did Not Cause Injury……………………………………18

      d.   Uber's Claims Are Barred by the Four-Year Statute of Limitations ............................19

   II.    Uber Fails to State a RICO Claim ....................................................................... 20

      a.   Uber Fails to Allege Predicate Acts of Racketeering Activity ......................................21

      b.   Uber Fails to Allege the Existence of an Enterprise or That the Gerling Defendants Participate in the Management of an Enterprise ...................................................25

      c.   Uber Fails to Allege a Pattern of Racketeering Activity................................................28

   III.   Uber's Conspiracy Claim Necessarily Fails ........................................................ 30

   IV.   Uber's Unjust Enrichment Claim Fails As It Is Duplicative of Its Fraud Claims ..................... 32

   V.   The Noerr-Pennington Doctrine Requires Dismissal…………………………………………33

CONCLUSION .....................................................................................................................33

## **TABLE OF AUTHORITIES**

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525 (S.D.N.Y. 2014).....................................31

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 771 F. App'x 498 (2d Cir. 2019) ......................................17

*Abbott Labs. v. Adelphia Supply USA*, No. 15-cv-5826, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ............ 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................ 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................................... 12, 13

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573 (2d Cir. 2006)....... 32

*Black v. Ganieva*, 619 F. Supp. 3d 309 (S.D.N.Y. 2022).........................................................25, 26, 31

*Boyle v. United States*, 556 U.S. 938 (2009) ................................................................................. 25

*Campos v. Lavinsky*, No. 22-CV-1278 (KAM), 2022 WL 16950054 (E.D.N.Y. Nov. 14, 2022)............... 31

*Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007)....................................... 27

*Chera v. Chera*, No. 99-CV-7101, 2000 WL 1375271 (E.D.N.Y. Sep. 20, 2000)..................................... 17

*Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021) .......................................... 23

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (2012) ..................................................................... 32

*D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663 (2d Cir. 2014)............................... ...... 28

*D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) .................................................................... 26

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ......................................................................... 20

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)............................................................ 14

*Dixon v. von Blanckensee*, 994 F.3d 95 (2d Cir. 2021) ................................................................. 13

*Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y. 2020) ................................................ 23

*F.D. Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362 (E.D.N.Y. 2002).............................. 31

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)..................................………..25

*Flexborrow LLC v. TD Auto Finance LLC*, 255 F. Supp. 3d 406 (E.D.N.Y. 2017)..................................... 20

*Franklin v. X Grear 101, LLC*, 2018 WL 3528731 (S.D.N.Y. Jul. 23, 2018) .......................................... 12

*GEICO v. Michael Gerling, M.D., et al*, No, 1:23-cv-7693-PLC-MMH (E.D.N.Y.)................................. 25

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002) ........................................ 17

*Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603 (2d Cir. 2019)............................................. 29

*Gurung v. MetaQuotes Ltd.*, No. 23-cv-6362, 2024 WL 3849460 (E.D.N.Y. Aug. 16, 2024).................... 27

*Halvorssen v. Simpson*, 807 F. App'x 26 (2d Cir. 2020)................................................................ 30

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010)...............................................................16

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ...................................................... 12

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992).............................................................15, 16

*In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ................................................... 17

*In re Simels*, 94 A.D.3d 108 (N.Y. Sup. Ct. App. Div. 2012).......................................................... 24

*J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020) ................................................................ 26

*Laydon v. Cooperative Rabobank U.A.*, 55 F.4th 86 (2d Cir. 2022).................................................. 16

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)............................................................... 21

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243 (E.D.N.Y. 2012) .......................... 23, 28

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)......................................................................... 14

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013)................................... 21

*Malek v. AXA Equitable Life Ins. Co.*, No. 20-cv-4885 (DG) (AYS), 2023 U.S. Dist. LEXIS 54123
    (E.D.N.Y. Mar. 29, 2023) ............................................................................................... 27

*Marvin v. Allen*, No. 23-cv-5947, 2024 WL 4290722 (S.D.N.Y. Sept. 24, 2024)..................................... 20

*Med. Marijuana, Inc. v. Horn,* 145 S. Ct. 931 (2025)................................................................…..15

III

*Medgar Evers Houses Tenants Ass'n v. Medgar Evers Houses Assocs., L.P.*, 25 F. Supp. 2d 116, 122 (E.D.N.Y. 1998), *aff'd*, 201 F.3d 430 (2d Cir. 1999)..........................................................................17

*Nachman v. Tesla, Inc.*, No. 22-cv-5976, 2023 WL 6385772 (E.D.N.Y. Sept. 30, 2023)..........................32

*New York v. Canepa*, 295 A.D.2d 247 (N.Y. Sup. Ct. App. Div. 2002) ....................................................24

*Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022) ....................................................................13

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117 (2d Cir. 2007) ..........................................13

*Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, No. 23-cv-1312, 2024 WL 4764060 (2d Cir. 2024)…………………………………………………………………………………………... 13

*Reich v. Lopez*, 858 F.3d 55 (2d Cir. 2017)..........................................................................…..20, 28, 30

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415 (2d Cir. 2024)....................13

*Ritter v. Klisivitch*, 2008 WL 2967627 (E.D.N.Y. July 30, 2008) ..............................................................29

*Roosevelt Rd. Re, Ltd. v. Subin*, No. 24-CV-05033 (HG), 2025 U.S. Dist. LEXIS 117080 (E.D.N.Y. June 19, 2025) ............................................................................................................................…..15, 16

*Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207 (E.D.N.Y. 2014).......................23

*Spinale v. United States*, No. 03-Civ-1704 (KMW)(JCF), 2004 WL 50873 (S.D.N.Y. Jan. 9, 2004).........16

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...........................................................................................14

*Superb Motors Inc. v. Deo*, No. 23-cv-6188 (JMW), 2025 U.S. Dist. LEXIS 52756 (E.D.N.Y. Mar. 21, 2025)................................................................................................................................................22

*Turner v. N.Y. Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d 161 (E.D.N.Y. 2015)............................................23

*U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275 (S.D.N.Y. 2012) ....................................................31

*United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).......................................................................30

*Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ...................................................................21

## Statutes

18 U.S.C. § 1961 ...................................................................................................................... 24, 28

18 U.S.C. § 1962 .......................................................................................................... 14, 20, 28, 30

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 11

Fed. R. Civ. P. 9(b)....................................................................................................................... 13

N.Y. Penal Law § 215.00............................................................................................................... 24

N.Y. R. Prof'l Conduct 1.8 ............................................................................................................ 22

**PRELIMINARY STATEMENT**

Dr. Michael Gerling and the Gerling Institute (together, the "Gerling Defendants") are medical providers—not litigants, not claimants, and certainly not conspirators. They've never filed a claim against Uber, never submitted a bill to Uber, and have never interacted with Uber in any way. Their only alleged role here is treating patients who were referred to them for evaluation or surgery. That alone doesn't make them racketeers.

Uber's theory of liability relies on broad inferences and vague accusations, falling well short of Rule 9(b)'s heightened pleading requirements. The Complaint doesn't lay out any actual facts showing that the Gerling Defendants committed fraud, took bribes, or were part of a criminal enterprise. Nor does it explain how anything the Gerling Defendants did caused Uber any direct injury, which is required under RICO. At most, Uber is just second-guessing medical decisions and disagreeing with a diagnosis.

What Uber is really doing here is trying to intimidate doctors from backing up injury claims, scare them out of testifying for injured plaintiffs, and shift blame away from its own corporate negligence. That's not what RICO is for. The claims against the Gerling Defendants should be dismissed.

Uber has now taken a second bite of the apple in filing their Amended Complaint. Defendants had already moved to dismiss Uber's original Complaint and laid out its many defects. In this newly Amended Complaint, Uber attempts to cure these defects by adding yet another alleged conspirator (Tarasov) in an attempt to round out the alleged "criminal enterprise," and adding yet more state court cases unrelated to Uber in order to support the alleged "pattern" of predicate acts. The fact remains that, after months of searching for any relevant state court cases which involve the defendants here, Uber has only been able to produce fewer than twenty cases which it attempts to use as evidence of the supposed "criminal

5

enterprise." However, only five (5) of these cases actually involve Uber.

As with their original complaint, as it concerns Defendants Michael Gerling and the Gerling Institute, the amended complaint is again wholly deficient. The claims are unripe and untimely, and they fail on the merits. Uber implicates either Gerling or the Gerling Institute in only three matters that only tangentially involved Uber. As stated at length in the Gerling Defendants' original Motion to Dismiss, any supposed injury to Uber lacks the requisite clarity and definition, as Uber is not even directly involved in those suits as parties. Moreover, in the relevant state court cases, the parties sought indemnification and expenses from the Uber drivers, effectively attributing any injury to its drivers, not the Gerling Defendants. Similarly, Uber has not linked any of the predicate RICO acts to the Gerling Defendants as required for RICO standing. Lastly, Uber's claims are untimely as Uber knew of its supposed "injury" over seven years ago, far beyond the four-year limitations period.

Any one of these elements warrants dismissal of this case. However, beyond these threshold defects, Uber also fails to even state a RICO claim as they have not adequately alleged basic RICO elements, such as the requisite predicate acts, nor a pattern of predicate acts or a RICO "enterprise." Uber's RICO "conspiracy" claim similarly fails alongside its substantive RICO claims. Regardless, even if Uber successfully cleared each hurdle laid out above, the First Amendment *Noerr-Pennington* doctrine, which immunizes litigation activity (of which all of Uber's alleged predicate acts are) from liability, independently bars all claims. As such, Uber's amended complaint should be dismissed with prejudice.

## STATEMENT OF RELEVANT FACTS

Much like in its initial complaint, Uber uses conclusory statements and constant information-and-belief statements to morph legitimate litigation activity into "racketeering." Uber now uses an amended complaint, in excess of 100 pages, to fling unsubstantiated

accusations at the Defendants, calling their medical diagnoses and procedures "knowingly false" and "medically unnecessary." *E.g.,* Dkt. #68 ¶¶94-95, 118-119. Uber labels any payment to a doctor as "corrupt[]" or "bribery," and it calls any legal or medical opinion it disagrees with "fraud." *E.g., Id.* ¶¶61, 72, 87. Uber also continues to recite full elements of its claims without any accompanying facts. *E.g., Id.* ¶¶302-304, 311-312.

Dr. Michael Gerling is a licensed orthopedic surgeon, and the Gerling Institute is a medical practice located in New York. Together, the Gerling Defendants provide clinical care to patients presenting musculoskeletal disorders, including those sustained in motor vehicle accidents. Similar to many medical professionals, Dr. Gerling serves as a treating physician or expert witness in litigations that arise from the accidents.

The Gerling Defendants have no contractual or financial relationship with Uber, and have never brought any legal action against Uber on behalf of themselves or their patients. Uber's allegations center around five individuals—Plaintiffs A through E—who were allegedly injured in minor accidents involving Uber drivers. Only three of these plaintiffs' cases involved the Gerling Defendants. The Amended Complaint introduces a total of nineteen state court cases which are allegedly evidence of the "scheme." However, only five of these state court cases actually involve Uber. *Id.* ¶¶35-139. In only three of these cases does Uber claim the Gerling Defendants performed medically unnecessary procedures, took "bribes," and made "knowingly false" statements, to support those claims. *Id.* at ¶¶54-58, 94-95, 118-119. But the actual allegations don't support that narrative nor vice vera.

Ludmila Gorbacevska ("***Plaintiff A***") was a passenger in an Uber vehicle that allegedly ran over a cardboard box. *Id.* at ¶35. Uber says the incident caused no injury and was captured on video. *Id*. Plaintiff A later retained counsel, received treatment, and underwent cervical spine surgery performed by Dr. Gerling. *Id.* at ¶57. Uber claims the surgery wasn't necessary and was only done

7

to boost a lawsuit. The Complaint also says the procedure was paid for through litigation funding coordinated by the law firm, supposedly with the understanding that Dr. Gerling would support the claim. *Id.* at ¶¶71-72.

Fatima Callum ("***Plaintiff B***") also received treatment from Dr. Gerling, including a cervical discectomy and fusion. *Id.* at ¶86. Uber alleges the injuries were exaggerated and that the surgery wasn't medically justified. Like with Plaintiff A, Uber claims the procedure was funded in a way that influenced testimony, but doesn't offer specifics beyond that. *Id.* at ¶87.

Zarrina Khalilova ("***Plaintiff D***") initially delayed seeking treatment, then was referred by his attorneys to several providers, including Dr. Gerling. *Id.* at ¶117. Uber says Gerling evaluated the plaintiff, recommended surgery, and performed it in 2017. *Id.* at ¶118. Again, Uber calls the treatment unnecessary but doesn't claim Gerling did anything outside the scope of standard medical care. *Id.*

Nowhere in the Complaint does Uber allege that the Gerling Defendants solicited patients, paid for referrals, or fabricated testimony. The allegations boil down to Uber disagreeing with how certain patients were treated. That doesn't make a RICO case.

## I.    State-Court Cases Not Involving Uber

Fourteen of the state cases in Uber's amended complaint have nothing to do with Uber and date back nearly a decade.  Of these, nine settled or survived summary judgment on the merits

In short, Uber's allegations, particularly against the Gerling Defendants, are based on little more than hindsight and assumptions about patient care, not concrete facts or criminal conduct. Ex. 60; Ex. 62; Ex. 65; Ex. 66; Ex. 67; Ex. 74; Ex. 75; Ex. 76; Ex. 91.  One was tried before a jury.  Ex. 84.  The defendants in these cases knew the facts first-hand, received discovery, or both. At no point did any state defendant (who had personal knowledge of the facts or participated in discovery (or both)) allege that the medical treatment they received from Gerling

was medically unnecessary or fraudulent, nor that the Gerling Defendants were receiving funds to pay for the surgeries as "bribes" from their attorneys.

Furthermore, nearly all of these "non-Uber" state-court cases included corroborating medical evidence from providers whom Uber does not allege are part of the scheme. Irina Vayman received two surgeries by non-defendant Dr. Cary Chapman and two other non-defendant physicians recommended that she receive surgical treatment for her injuries. Ex. 63 ¶ 9 (identifying two surgeries on August 19 and October 7, 2020); Ex. 64 at 81:5–17 (identifying Dr. Chapman as the physician who performed the two surgeries). Similarly, Alexandre Volcthenkov received surgery as a result of the accident from non-defendant Dr. Buberman, and Sukhrob Tagiyev received plasma injections as a result of the accident in his left shoulder from non-defendant Dr. Marcus. Ex. 72 ¶¶ 9–10; Ex. 87 ¶ 1. And in DeWayne Currence's case, multiple non-defendant physicians corroborated Currence's injuries and attributed them to his accident. *See, e.g.*, Ex. 93 ¶ 21 (Dr. Grigorian); Ex. 94 ¶¶ 40–41 (Dr. Adeosun).

Lastly, in its amended complaint, Uber includes new accusations and supporting "evidence" of the alleged "bribes" Gerling took from the various lawyer defendants (i.e. the Wingate and Banilov Defendants). The main piece of evidence Uber uses here is their allegation that the Gerling Institute "maintains two sets of books" (Dkt. #68 at ¶286) and that they "consistently bill above the prevailing market rate." (*Id.* at ¶287). Uber claims that "[t]he Gerling Defendants use one system for their ordinary patients who pay using insurance…The Gerling Defendants track the lawyer-directed above-market payments received in connection with the scheme using an entirely separate set of books…" (*Id.* at ¶286). Uber alleges that "[t]he Gerling Defendants use this separate set of books for its illicit business to generate fraudulent invoices, at significantly above-market rates, to submit to no-fault carriers or for large up-front payments from attorneys or litigation funders." *Id.*

Far from being the "smoking gun" that Uber clearly wants it to be, the Gerling Defendants' books are common practice for medical practitioners. There is a myriad of reasons why a medical provider would use separate and differing sets of books, any one of which defeats Uber's tenuous argument. Medical practices deal with a complex financial environment involving patients (some with insurance and some without, some pay by cash, and some pay through legitimate legal funding), insurance companies, and regulatory bodies. Managing different financial methods and reports is a critical business function and, while perhaps not used in Uber's line of business, the varying books used by the Gerling Defendants help to keep clear who patients are and how they are paying. Insurance-paid procedures inherently require its own set of accounting as each and every procedure has a requisite insurance code attached to it with connected range of compensable fees. Moreover, at no time does Uber allege any concrete facts as to how they know that one set of books is used for "illicit business" practices whereas the other book is only for the "legitimate portion of Gerling Institute's business." Uber is again baselessly throwing allegations out with not even a modicum of evidence backing their false claims. The Gerling Defendants have never been found by any controlling administrative body (such as the AMA or IRS) to have violated any applicable rule or regulation. In fact, Uber merely adds this demonstrably false accusation as another mud-slinging tactic, just to see what sticks.

The same can be said about their accusation that "the Gerling Defendants consistently bill at above the prevailing market rate." (*Id.* at ¶286). Not only does Uber not provide a single citation for their "factual" allegation that what the Gerling Defendants charged for various medical procedures was above the alleged "prevailing market rate," they seem to hold themselves out as experts in the medical field of spinal surgery, enough to know what spinal surgeons should or should not charge for various medical procedures. Uber does not allege, because they do not know, the factual particulars of every spinal surgery that they claim the Gerling Defendants

charged "too much" for. There are innumerable different nuances in every case that may necessitate variations on procedures that may increase the cost of a surgery, especially one as "invasive" and complex as a spinal fusion or a diskectomy. Moreover, Gerling is a private medical provider and can charge above the market rate for his services, especially if he is excellent at his job, which he is. As an analogy, an excellent lawyer may charge above the "prevailing market rate" to represent a client in a litigation because they are an excellent lawyer. An "average" lawyer may charge closer to the "prevailing market rate." Just because one charges more than the other is not fraudulent, it is good business. Similarly in this case, the Gerling Defendants can charge whatever they choose to, as long as it is not in violation of applicable laws. In fact, the Gerling Defendants often charge *less than* the prevailing market rate when insurance is not covering the needed medical procedures. Here, Uber wrongheadedly attempts to use basic economics as evidence of a RICO scheme.

## LEGAL STANDARD

### I.    Standard Under Rule 12(b)(1)

In order to survive a Rule 12(b)(1) Motion to Dismiss, the party invoking the court's jurisdiction must demonstrate, "by a preponderance of the evidence" that subject matter jurisdiction is present. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Whether a plaintiff has standing is a preliminary inquiry that determines the court's authority to adjudicate the matter. C*ohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018). The plaintiff has the burden of demonstrating that the alleged facts plausibly suggest that they have standing to bring suit. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022). Without standing, a federal court lacks subject matter jurisdiction, and dismissal is required. *See* Fed. R. Civ. P. 12(h)(3); *Hibbert v. Capital One Auto Fin.*, 1:23-CV-07538(OEM)(TAM), 2024 WL

3498536, at *4 (E.D.N.Y. July 22, 2024).

## II.    Standard Under Rule 12(b)(6)

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Franklin v. X Grear 101, LLC*, 2018 WL 3528731, at 3 (S.D.N.Y. Jul. 23, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the Supreme Court stated in *Iqbal*:

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility **standard** is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (finding a court need not credit "[g]eneral, conclusory allegations ... belied by more specific allegations of the complaint"). Therefore, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; see also *id.* at 678 ("[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)); *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (noting a complaint will not suffice if it lacks factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests"). While a court must "accept as true" all "well-pleaded factual allegations in the complaint," it "need not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021). The "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).

### III.    Standard Under Rule 9(b)

Claims that involve allegations of fraud are subject to the heightened pleading requirements of Rule 9(b). *See Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, No. 23-cv-1312, 2024 WL 4764060, at *3 (2d Cir. 2024). A plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022). While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "a plaintiff must still allege facts that give rise to a strong inference of fraudulent intent," *Red Apple*, 2024 WL 4764060, at *3.

### IV.    Standard for Article III Standing

In order to establish Article III standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

(2016). An injury-in-fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339. Beyond establishing injury-in-fact, plaintiffs must also trace a "causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must "be himself among the injured." *Id.* at 563. RICO imposes even stricter requirements. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). To bring a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must show not only a concrete injury, but also that the injury was proximately caused by a predicate act in violation of one of the substantive provisions of § 1962.

## ARGUMENT

Uber fails to state a single claim against the Gerling Defendants. While the RICO claims Uber purports fail for various different reasons, its lack of RICO standing is so egregious that this Court need not reach the other defects before dismissing this case. Moreover, Uber utterly fails to plead a RICO enterprise, or even one predicate act, let alone a pattern. Uber's claims are also untimely. The RICO claims must fail along with the substantive charges. Lastly, all conduct Uber attributes to the Gerling Defendants is immunized by *Noer-Pennington*.

These various defects come from Uber's tactic of alleging only that which it wishes to be true. At the end of the day, Uber's unsupported allegations do not survive in federal court, where a complaint must contain sufficient "factual matter" to survive a motion to dismiss. *Walker v. Senecal*, 130 F.4th 291, 297 (2d Cir. 2025). Mere "labels and conclusions" with "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will allegations susceptible to an "obvious alternative explanation," I*d.* at 567, or that are "merely consistent with" liability, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Uber only relies on vague labels: "false" or "fraudulent" claims, "not serious" injuries, "unnecessary" medical procedures, and intent to "bribe" or "defraud." Without substantive fact,

dismissal is required.

## I.       Uber Lacks RICO Standing

### a.   Uber Fails to Properly Allege Causation

Uber lacks RICO standing in this case because the injuries which it alleges in its Complaint are far too indirect and remote. As a corporate defendant in various third-party personal injury suits, Uber's asserted harm is, at best, a secondary and derivative consequence of the alleged fraudulent scheme. Accordingly, any injuries Uber claims to have suffered as a result of the alleged scheme were not proximately caused by Michael Gerling or the Gerling Institute (collectively referred to herein as the "Gerling Defendants"). Uber contends that it faced higher litigation expenses and increased settlement liability due to allegedly unnecessary medical treatments (Complaint ¶137). However, these alleged harms are speculative, stem from unrelated litigations, and are arguably self-inflicted. In fact, Uber consistently refers to harm suffered by other, non-related entities such as "the courts of the State of New York" (*Id.* ¶138) which further evidences the indirect and attenuated nature of its asserted injuries. In their Complaint, Uber fails to allege any direct harm to their own business or property that is at all attributable directly to the Gerling Defendants, as required by Article III.

In order to meet RICO's injury requirement, a plaintiff must sufficiently establish a "direct relationship" between the injury and the defendant's purported conduct *See Roosevelt Rd. Re, Ltd. v. Subin*, No. 24-CV-05033 (HG), 2025 U.S. Dist. LEXIS 117080, at *7 (E.D.N.Y. June 19, 2025) (quoting *Med. Marijuana, Inc. v. Horn,* 145 S. Ct. 931, 945 (2025)). More specifically, "§ 1964(c)'s 'by reason of' language demands 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). This means that, in order to meet this causal requirement, a plaintiff must show that the predicate offense was the proximate cause of its injury, not just a "but for" cause. *Hemi Grp.,*

*LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 268). Accordingly, "whenever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement.'" *Horn*, 145 S. Ct. at 945 (quoting *Hemi*, 559 U.S. at 10). *See also Laydon v. Cooperative Rabobank U.A.*, 55 F.4th 86, 100–01 (2d Cir. 2022) (dismissing RICO claim where the injury did not flow directly from the first step in the causal chain); *Spinale v. United States*, No. 03-Civ-1704 (KMW)(JCF), 2004 WL 50873, at *15 (S.D.N.Y. Jan. 9, 2004).

A recent decision of this District Court for the Eastern District of New York, *Roosevelt Rd. Re, Ltd. v. Subin*, touches directly on this issue. In this case, the Court dismissed a RICO claim which alleged injury through increased legal fees and adverse litigation outcomes which resulted from the alleged RICO enterprise. In doing so, the Court held that such injuries were too remote to satisfy RICO's proximate cause requirement. *Id.* at 18-19. The Court underscored that expenses arising from the defense or settlement of third-party lawsuits do not satisfy the direct injury requirement of §1964(c), especially when such harm results from the discretionary choices of independent actors like litigants, legal counsel, or the Court (*Id.* at 19; *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)) for the contention that claims which depend on intervening decisions, such as litigation strategies or judicial rulings, are too attenuated to satisfy that requirement. (*Id.* at 268)).

Uber claims that its injuries, which again consist of increased legal fees and settlement costs, resulted from third-party litigation allegedly precipitated, in part, by the Gerling Defendants' role in the alleged fraudulent scheme, including the creation of "false diagnoses, provid[ing] unnecessary and expensive treatments, and provid[ing] false statements regarding causation and necessity. Complaint ¶¶49, 50, 52-55, 64, 78, 84-85, 112, 118, 126-130. However, much like in *Subin*, when the superfluous and conclusory allegations are taken away from their

16

Complaint, it becomes clear that Uber's alleged "harm" resulting from the actions of the Gerling Defendants stem only from the independent decisions of unrelated third-party litigants and their attorneys and not from any act of the Gerling Defendants. As such, Uber cannot sufficiently allege standing to support their RICO claims.

Courts routinely reject RICO standing where plaintiffs seek recovery for costs incurred in defending third-party litigation. *See Chera v. Chera*, No. 99-CV-7101, 2000 WL 1375271 (E.D.N.Y. Sep. 20, 2000) (dismissing RICO claim where predicate acts of mail and wire fraud were directed at various third parties and were not the cause of the injuries alleged); *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 771 F. App'x 498, 504 (2d Cir. 2019) (no proximate cause where injury resulted from independent market actors' decisions allegedly influenced by LIBOR manipulation). Similarly here, Uber's alleged injuries are too indirect, derivative, and contingent on third-party conduct to satisfy RICO's standing requirement.

Moreover, by its own "admission" in its Complaint, Uber was not even the target of the alleged fraudulent scheme. To establish RICO standing, a plaintiff must have been the intended target of the alleged scheme. *See In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 549 (S.D.N.Y. 2002). The resulting injury must be the "preconceived purpose" or "specifically intended consequence" of the defendant's conduct. *See Medgar Evers Houses Tenants Ass'n v. Medgar Evers Houses Assocs., L.P.*, 25 F. Supp. 2d 116, 122 (E.D.N.Y. 1998), *aff'd*, 201 F.3d 430 (2d Cir. 1999).

The Complaint contains no allegation that Uber was the intended victim of the alleged fraudulent scheme. Instead, it outlines a coordinated effort to recruit personal injury plaintiffs, direct them to specific lawyers and medical professionals, and fabricate or exaggerate medical documentation to support tort claims. Complaint ¶¶ 2–4, 37–38, 43–45, 54. As Uber stated in their Complaint, these allegedly fraudulent actions were directed to "fraudulently induce a large

settlement" which would be paid out to the third-party plaintiffs. *Id.* at ¶54. However, as it relates directly to the Gerling Defendants, Gerling allegedly made "false diagnoses, performed unnecessary treatment and procedures, and provided false documentation and testimony in exchange for direct or indirect payments from the Law Firm Defendants, including through third-party funders" *Id.* at ¶128. This clearly does not even implicate any harm to Uber directly. At no point do they allege that they were solicited, misled, or contacted by the Gerling Defendants. Uber's "harm" as a result of the Gerling Defendants' alleged "false diagnoses" and "unnecessary treatment and procedures" were higher litigation costs and settlement payouts. These "harms" are incidental, not intentional. Again, as found in *Subin*, this logical leap from the alleged misconduct of the Gerling Defendants to Uber's harm "require[es] the court to 'move well beyond the first step' of injuries" (*Subin*, *supra* at 6, quoting *Hemi*, *supra* at 10) which, as stated above, means that Uber's theory of causation cannot meet RICO's direct relationship requirement. (*Horn*, *supra* at 945). Put differently, since Uber was neither a direct nor intended target of the alleged racketeering activity, it lacks standing to bring a civil RICO claim under 18 U.S.C. §1964(c).

     b.  <u>Uber's Claims Are Unripe Because Its Damages Are Not Clear and Definite</u>

       The Gerling Defendants incorporate the arguments set forth in Lavelle and Banilov's Motion to Dismiss. *See* Lavelle and Banilov's Motion to Dismiss at 15.

     c.  <u>The Alleged "Bribes" Did Not Cause Injury</u>

       Uber fails to establish that any so-called "bribes" proximately injured it. Compl. ¶¶72, 87, 119. Uber does not allege any bribery occurred in the *Lopez* or *Khalilova* cases. *Id.* ¶¶114-139. Uber speculatively asserts that the Banilov Defendants "bribed" the doctor defendants (including the Gerling Defendants) in order to "influence" their potential testimony, before "hand[ing] off" the case to other attorneys who sued Uber. Dkt. #52 at 5. Uber then uses these "bribes" to give

themselves RICO standing. However, this "hand-off" takes Uber's causation many steps too far down the chain of causation to support RICO standing. Moreover, tracing any given expense to the testimony of the Gerling Defendants alone versus the other witnesses in any given state-court case cited by Uber is "'speculative in the extreme.'" *Empire Merchs.*, 902 F.3d at 143. For example, in the *Callum* case, both Dr. Gerling and a physician unconnected to the alleged scheme attested to Callum's injuries. *See* Ex. 23 at 2. Uber did not challenge those injuries, but even if it had, it cannot say Dr. Gerling's testimony versus the other physician's caused any given cost. Similar questions loom in *Khalilova*, which also involved multiple unconnected doctors. Compl. ¶¶114-116.

Moreover, Uber does not plead any concrete facts connecting any of these "bribes" to their supposed injury, as required for bribery RICO predicates. *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015). Instead, Uber claims that it incurred "legal costs in defending these lawsuits" generally, without alleging any "bribe" specifically caused its "injuries." (Dkt. #68 at ¶297; *see Id.* ¶¶55, 78, 109, 112). Uber even resorts to simply asserting a legal conclusion as fact in stating that, without the Gerling Defendants' testimony, the plaintiffs in the various state-court cases would "have no state court claim." (*Id.* at ¶71). Even if Uber's claims were not contradicted by testimony from multiple experts not alleged to be part of the "scheme" (which Uber conveniently omits), "'legal conclusions masquerading as factual conclusions will not suffice.'" *Long v. Zhuang*, No. 22-cv-1293, 2024 WL 4250308, at *4 (E.D.N.Y. Aug. 8, 2024). These extremely tenuous allegations do not entitle Uber to a civil RICO remedy.

d. <u>Uber's Claims Are Barred by the Four-Year Statute of Limitations</u>

The Gerling Defendants incorporate the arguments set forth in Lavelle and Banilov's Motion to Dismiss. *See* Lavelle and Banilov's Motion to Dismiss at 23.

19

## II.    Uber Fails to State a RICO Claim

RICO claims are "an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Flexborrow LLC v. TD Auto Finance LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017).  However, even though RICO is a potent weapon against defendants, "plaintiffs wielding RICO almost always miss the mark." *Flexborrow*, 255 F. Supp. 3d at 414.  To clear civil RICO's "many hurdles," a plaintiff must plausibly allege that each defendant (1) conducted or conspired to conduct, (2) the affairs of an "enterprise," (3) through a pattern, (4) of racketeering activity (*i.e.*, "predicate acts"), (5) that directly injured the plaintiff's business or property.  *Id.*  Courts strictly enforce each element specifically to "flush out frivolous RICO allegations at an early stage of the litigation." *Id.* Here, Uber's claims are exactly the type of attenuated and overreaching pleadings that courts have lamented. Every claim fails at the threshold for lack of RICO standing or under the statute of limitations, and on every substantive element.

### a.    Uber Fails to Allege Predicate Acts of Racketeering Activity

To state a civil RICO claim under 18 U.S.C. §1962(c), a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *accord Marvin v. Allen*, No. 23-cv-5947, 2024 WL 4290722, at *7 (S.D.N.Y. Sept. 24, 2024). The "racketeering" element requires plausible allegations that each defendant has committed ***two or more*** predicate acts that "pose a threat of continuous criminal activity." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017). Furthermore, where a RICO claim is based on fraud, the allegations must satisfy the heightened pleading standard of FRCP 9(b), which requires the complaint to specify the "time, place, speaker, and content" of the alleged misrepresentations, along with facts giving rise to a strong inference of fraudulent intent. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir.

2013). Here, Uber's allegations come up woefully short.

          *i. Uber Does Not Allege Mail or Wire Fraud With the Requisite Particularity*

Uber attributes only two sets of alleged fraudulent conduct to the Gerling Defendants: wire fraud and bribery. *See e.g.* Complaint ¶45, 56. However, Uber fails to plead either set of fraudulent conduct with the required particularity set forth in FRCP 9(b), including the time, place, speaker, content, and facts supporting scienter. *See Lundy*, *supra* at 119. Since Uber fails to plead either set of fraudulent conduct with the required particularity, the claims against the Gerling Defendants must be dismissed. "To establish mail or wire fraud as a predicate act under RICO, a plaintiff must allege (1) a scheme to defraud, (2) to obtain money or property, and (3) the use of the mails or wires to further that scheme." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). In doing so, the plaintiff must "(1) detail the statements that are false or fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Id.* Additionally, the complaint must allege facts giving rise to a strong inference of fraudulent intent, either by showing motive and opportunity or by pleading circumstantial evidence of conscious misbehavior or recklessness. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

Uber's Complaint utterly fails to meet that standard. Uber attributes multiple instances of fraud to the Gerling Defendants, including Plaintiff A (Complaint ¶¶48-55), Plaintiff B (Complaint ¶¶75-78, 84-85), and Plaintiff D (¶¶112-113). All cases involve a similar alleged pattern: the plaintiffs would be referred to Gerling in exchange for a referral fee, Gerling would treat the patient, and Gerling would occasionally provide expert testimony at trial or via a deposition. All of these instances of conduct, which Uber claim either constitute wire fraud (in the transmission of allegedly false medical summaries through patient records portals) or bribery (in the alleged exchange of money for influenced and false testimony). However, Uber offers

absolutely no factual evidence or even anything more than mere conclusory allegations "upon information and belief" to support their contentions. The Gerling Defendants made and transmitted perfectly legitimate and run-of-the-mill medical diagnoses, prognoses, and opinions to their patients' attorneys, who referred their clients to the Gerling Defendants, a legitimate and common practice (in New York, lawyers may pay for "medical diagnostic work connected with the matter under litigation and [related] treatment" in contingency cases. N.Y. R. Prof'l Conduct 1.8, cmt. 9B). Uber offers no factual support for its conclusory claim that the treatments given by Gerling were "unnecessary," "knowingly false," and/or "made with the knowledge that it [the referral fee] would corruptly influence Gerling's testimony regarding the necessity for such medical treatment" (Complaint ¶72) other than its own "information and belief." Nor does Uber submit any facts undermining Gerling's professional assessments or suggesting intent to defraud besides various "independent examination[s]" made by unnamed and unspecified individuals which purport to prove Uber's allegations (*see generally* Complaint ¶¶59, 85). In fact, Uber frequently puts forth its own medical opinion in its Complaint, besides obviously not being a medical professional. (*see e.g.* Complaint ¶58 ("regarding Gorbacevska's [Plaintiff B] cervical spine—which at most reflected the ordinary wear and tear of a person of plain-tiff's age rather than any acute injury").

First, Uber fails to allege with the requisite particularity why Gerling's statements and diagnoses were false at the time they were made, other than by (occasionally) asserting that an unverified third-party "medical expert" retained by Uber said so. Uber's allegations that Gerling's statements were "knowingly false when made given that there was no such accident or resulting injury" are based entirely on conjecture rather than specific, non-speculative factual allegations. *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 585 (S.D.N.Y. 2021) ("conclusory allegations of fraud are insufficient under Rule 9(b).").

Second, similar to Uber's allegations against Leonid Reyfman, even though Uber alleges that various statements and/or medical notes were transmitted via a patient portal (Complaint ¶¶56, 58), it offers zero facts indicating that Gerling knew the statement was false, fraudulent, and/or omitted material facts at the time it was made other than its own "information and belief" (*See generally* Complaint ¶¶87, 148, 156). Boilerplate language of this kind does not satisfy Rule 9(b). *See Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 349 (S.D.N.Y. 2020).

Third, while the Complaint asserts, "upon information and belief," that the "Doctor Defendants" – including Gerling – received "excessive and/or above-market compensation" in return for producing fraudulent medical records (Complaint ¶26), this allegation is entirely conclusory and lacks specificity. Uber fails to identify how much Gerling was allegedly paid, who made such payments, or how such payments were linked to the medical diagnoses, prognoses, and opinions attributed to Gerling regarding Plaintiffs A, B, and D. Courts have held that generalized financial motive is insufficient to support a strong inference of fraudulent intent. *See Turner v. N.Y. Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d 161, 169 (E.D.N.Y. 2015); *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 265–66 (E.D.N.Y. 2012).

Fourth and finally, Uber simply submits, without distinction, that the statements allegedly made by Gerling could only be fraudulent, leaving out the possibility of potential error or professional disagreement. Courts have recognized that diagnostic disputes or allegations of over-treatment, standing alone, are insufficient to support a RICO fraud claim. *See Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 227 (E.D.N.Y. 2014). Again Uber cites zero facts or evidence which supports their contention that Gerling's statements were fraudulent, other than their "information and belief" and the "professional" opinion of an unidentified third-party medical "professional." As such, the allegations directed at the Gerling Defendants do not satisfy Rule 9(b) and Uber's RICO claims must be dismissed to the extent that they rely on these purported predicate

acts of mail or wire fraud.

### ii. *Uber Does Not Allege Witness Bribery as a Predicate Act*

The Complaint asserts witness bribery under New York Penal Law § 215 as a predicate act of racketeering in Counts I, II, and III. Complaint ¶¶ 315(c), 322(c), 329(c). To qualify as a predicate under RICO, the act must be "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Under New York law:

> A person is guilty of bribing a witness when he confers, or offers or agrees to confer, any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement or understanding that (a) the testimony of such witness will thereby be influenced, or (b) such witness will absent himself from, or otherwise avoid or seek to avoid appearing or testifying at, such action or proceeding.

N.Y. Penal Law § 215.00.

Uber fails to allege bribery under this N.Y. Penal Law, which requires "the existence of 'an agreement or understanding that the testimony of such witness will thereby be influenced.'" *In re Simels*, 94 A.D.3d 108, 112 (N.Y. Sup. Ct. App. Div. 2012). Uber merely alleges bribery in solely conclusory terms.

The Complaint alleges that Gerling was paid by the Law Firm Defendants to perform medical procedures and services on Plaintiffs A, B, and D (Complaint ¶¶45, 72, 87, 148, 156). The Complaint does not allege that the Gerling Defendants conferred, offered, or agreed to confer any benefit upon a witness, or that they entered any agreement to influence testimony or secure a witness's absence. Uber never alleges, for example, the payment was above "the prevailing rate" or that Dr. Gerling failed to perform the paid-for services. *New York v. Canepa*, 295 A.D.2d 247, 247 (N.Y. Sup. Ct. App. Div. 2002) (prevailing rate not a bribe). Moreover, Uber fails to connect any benefit to a specific witness or statement. It is important to note here as

well than Uber attempts to use other ongoing, unrelated suits in which Gerling was either a witness or a party to influence this Court's opinion of him unjustly and prejudicially. Uber references a suit, *GEICO v. Michael Gerling, M.D., et al*, No, 1:23-cv-7693-PLC-MMH (E.D.N.Y.), for the mere contention that he has been accused of accepting alleged kickback payments from referring attorneys in the past. This case was settled out of court and zero liability was ever found on behalf of Gerling. The only reason Uber brought up this case is to influence this Court and prejudice the Gerling Defendants.

Absent factual allegations showing that the Gerling Defendants conferred a benefit with intent to influence testimony, or that the alleged payment given to Gerling was above the prevailing rate, the Complaint fails to state a bribery-based predicate act. Without any plausibly alleged predicate acts, Uber's RICO claims fail.

b. <u>Uber Fails to Allege the Existence of an Enterprise or That the Gerling Defendants Participate in the Management of an Enterprise</u>

To plead a RICO association-in-fact enterprise, a plaintiff must allege "evidence of an ongoing organization" that "function[s] as a continuing unit," with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associations to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945–46 (2009). The "purpose" element requires "a common purpose to engage in a particular fraudulent course of conduct," which the individuals "work together to achieve," *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004), and "a common intent to violate RICO or to act unlawfully." *Black v. Ganieva*, 619 F. Supp. 3d 309, 331 (S.D.N.Y. 2022). Additionally, the enterprise must be distinct from the alleged pattern of racketeering activity. *First Capital*, 385 F.3d at 173–74. Uber's allegations do not satisfy any of these requirements.

Allegations of routine interactions or parallel conduct among defendants are not enough. Courts have repeatedly held that "allegations of parallel conduct alone cannot support the inference

that RICO defendants are joined together for a common purpose." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 169 (S.D.N.Y. 2020). Similarly, "rimless hub-and-spoke conspiracies" are not sufficient to establish a RICO enterprise. *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir.2018); *Abbott Labs. v. Adelphia Supply USA*, No. 15-cv-5826, 2017 WL 57802, at *5–6 (E.D.N.Y. Jan. 4, 2017).

In assessing whether an association-in-fact enterprise exists, courts look to whether (i) the alleged members have interpersonal relationships, (ii) the complaint explains how they came to act together or how they know one another, (iii) the members rely on one another, benefit one another, or otherwise act symbiotically, and (iv) the predicate acts could not have been accomplished without the involvement of the other members. *Black*, 619 F. Supp. 3d at 334. The Complaint does not adequately plead any of these elements.

In its Complaint, Uber alleges that the Doctor Defendants are interlinked sufficient to support a finding of an "enterprise" merely because they have a professional relationship with one another and have referred patients to each other in the past (Complaint ¶ 300). As Wingate explains, (Wingate Mem. of Law pg. 30) each personal injury case cited by Uber in its amended complaint involves a different combination of defendants, a different orchestrating entity, different lawyers and physicians who are not alleged to be part of any scheme, and a different sequence or pattern in which the purported predicate acts took place. *See Id.* 4–12. If anything, this "evidence" only shows that multiple law firms (including those not included in this amended complaint) referred cases to defendant law firms, and that various law firms funded medical procedures performed by the Gerling Defendants, as well as doctors not included in this amended complaint, as is common practice throughout this industry. Absent this kind of joint conduct, any such "business relationship" cannot stand in for the interpersonal relationship required for a RICO enterprise. *Gurung v. MetaQuotes Ltd.*, No. 23-cv-6362, 2024 WL 3849460, at *10 (E.D.N.Y. Aug. 16, 2024) (*see also Cedar Swamp Holdings, Inc. v. Zaman*, 487

F. Supp. 2d 444, 451–52 (S.D.N.Y. 2007), dismissing RICO claims based on business dealings rather than concerted action toward a common objective). This so-called "unit" also involved dozens of non-defendant physicians, non-defendant attorneys, and even the nineteen plaintiffs themselves – all of whom would have had to be oblivious to the scheme (which would be impossible given Uber's allegations about how obvious the faked injuries were) or complicit (which Uber does not allege) – is emblematic of an enterprise structure that "courts have consistently and correctly rejected." *Moss v. BMO Harris Bank, N.A.*, 258, 302 F. Supp. 3d 289 (E.D.N.Y. 2017).

Moreover, Uber fails to allege nonconclusory facts supporting an inference that the Gerling Defendants coordinated with the Law Firm Defendants toward a common purpose. RICO enterprises require interpersonal relationships or facts indicating collective action *See Malek v. AXA Equitable Life Ins. Co.*, No. 20-cv-4885 (DG) (AYS), 2023 U.S. Dist. LEXIS 54123, at *36 (E.D.N.Y. Mar. 29, 2023). The Complaint fails to point to any sort of interpersonal relationship or facts which would support such a finding, such as communications, meeting, or coordinated conduct among the alleged members of the RICO enterprise. The Complaint fails to allege that Gerling shared in any proceeds of the alleged enterprise, relied on others' actions to advance his own interests, or communicated with any other alleged member. Lastly, despite alleging that the Defendants "share[d] geographical proximity…in Kings County and the surrounding area," (Complaint ¶300(e)) such a bare allegation, without more, is insufficient to establish an association-in-fact enterprise. *See Superb Motors Inc. v. Deo*, No. 23-cv-6188 (JMW), 2025 U.S. Dist. LEXIS 52756, at *50 (E.D.N.Y. Mar. 21, 2025) (finding routine dealings among professionals insufficient to show RICO enterprise without evidence of shared illicit purpose). For these reasons, the Complaint fails to plead the existence of a RICO enterprise under 18 U.S.C. § 1961(4).

Lastly, to plead a cognizable legal enterprise under 18 U.S.C. § 1962(c), a plaintiff must plausibly allege that a legal entity was used to carry out racketeering acts and that it shared in the fraudulent purpose. *See Liberty Mut. Ins. Co.*, 879 F. Supp. 2d at 274. Simply identifying a legal entity is not enough; the complaint must also allege that defendants conducted the enterprise's affairs through a pattern of racketeering activity and that a nexus exists between that activity and the enterprise's operation. *See D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 667 (2d Cir. 2014). Uber identifies the "Gerling Institute Enterprise" (Count II) and the "Pain Physicians NY Enterprise" (Count III), including the medical practice, its affiliated physician, and several Law Firm Defendants. Uber fails to plausibly allege that either entity served as a vehicle for the alleged racketeering activity or shared a fraudulent purpose. Moreover, Uber fails to allege that any defendant directed the affairs of these entities through such racketeering activity. Regarding the Gerling Institute, the Complaint fails to allege its involvement in treating or litigating claims related to Plaintiff C.

The Complaint does not allege that either Doctor Defendant was used or directed to conduct the requisite racketeering activity or than Gerling utilized the Gerling Institute to commit such acts. It further fails to plead that either entity was structured, operated, or directed for the purpose of perpetrating fraud. *See D. Penguin Bros.*, 587 F. App'x at 667.

c.  <u>Uber Fails to Allege a Pattern of Racketeering Activity</u>

Even if each predicate were adequately pleaded, Uber still falls short of alleging a continuous pattern of predicate acts.  To state a civil RICO claim under 18 U.S.C. 1962(c), Uber must allege at least two predicate acts and a pattern of racketeering activity. Continuity can be open or closed ended. *See Reich*, 858 F.3d at 59. Open-ended continuity requires facts showing that the "predicate acts were the regular way of operating" or that the acts themselves imply "a threat of continued criminal activity" or were "inherently unlawful." *Grace Int'l Assembly of*

*God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019).  Closed-ended continuity requires "a series of related predicates" spanning at least two years.  *Id.* Conclusory assertions are insufficient to establish either form of continuity, (*Id.*), and continuity must be alleged "with respect to each defendant individually." *First Capital*, 385 F.3d at 180.

Uber fails to show open-ended continuity as to the Gerling Defendants as it fails to sufficiently allege a threat of continued criminal activity. As stated above, Uber points to one (1) completely unrelated case, *GEICO v. Gerling*, which was never adjudicated on the merits and settled out of court, to support their contention that "Gerling continues to perform invasive and unnecessary surgeries on personal injury plaintiffs and provide false testimony at trial for the purpose of enriching himself and the other members of the RICO enterprise." Complaint ¶291. This case also involved alleged kickbacks by personal injury attorneys to a third-party medical institution allegedly owned and controlled by Gerling through a phony marketing firm. Complaint ¶288.

Uber also fails to show closed-ended continuity. Although the Complaint alleges conduct spanning more than two years (for Plaintiffs A-E), duration alone is insufficient to establish continuity. *See First Capital*, 385 F.3d at 181; *Ritter v. Klisivitch*, 2008 WL 2967627, at 11 (E.D.N.Y. July 30, 2008). Uber likely attempted to remedy this defect by including the fourteen other state-court cases which do not include Uber, but which involve acts by the Gerling Defendants, as evidence of this continuity. Even if Uber adequately alleges bribery or fraud (it does not), Uber asserts only in conclusory terms that these acts are "'related'" to each other and to the Gerling Defendants' alleged acts in three of the Uber-related cases. *Grace Int'l*, 797 F. App'x at 605. While Uber alleges alleged predicate acts attributed to Gerling which span multiple years, that mere fact would be insufficient to establish closed-ended continuity without more, such as many victims or other schemes, *First Capital*, 385 F.3d at 181.  Uber offers nothing in the way of many other victims or schemes, relying on a small handful of cases and only the sparse identified "victims." *Id.*

Next, Uber also fails to plead sufficient relatedness. The "pattern" requirement is meant to prevent RICO's application to isolated or sporadic acts. *See Halvorssen v. Simpson*, 807 F. App'x 26, 29 (2d Cir. 2020) (citing *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989)). A pattern requires showing that the acts are related to each other (horizontal relatedness) and to the enterprise (vertical relatedness). *Id.*; *Reich,* 858 F.3d at 60-61. Where the enterprise is primarily a legitimate business, courts must assess whether the alleged predicate acts share participants, purposes, victims, or methods. *Reich*, 858 F.3d at 61.

Uber merely alleges conduct relating to three personal injury cases which involve the Gerling Defendants but does not connect the alleged acts across those cases. More tellingly, Uber offers no meaningful connection among the predicate acts beyond a general assertion that they all involved a shared purpose. In fact, almost none of the defendants in this case are present in all personal injury actions (i.e. involved in all of Plaintiff A-D's cases; Mr. Wecshler is involved in only Plaintiff A and C's cases; Lavelle is involved with only Plaintiff B; Reyfman is not involved with Plaintiff B or D; Gerling is not involved with Plaintiff C; Banilov is not involved with Plaintiff C; Wingate is not involved with Plaintiff D.  And Uber is not even a defendant in Plaintiff D's case). Even regarding the additional fourteen non-Uber cases included in the amended complaint, the same sporadic involvement of the various defendants is present there as well. Common participants and a vague, generalized intent to assist an enterprise are insufficient to show relatedness. *See Reich*, 858 F.3d at 62 (holding horizontal relatedness not satisfied where common purpose and participants were the only connecting threads).

### III.   Uber's Conspiracy Claim Necessarily Fails

To state a claim under 18 U.S.C. § 1962(d), a plaintiff must allege that each defendant knowingly agreed to participate in the enterprise through a pattern of racketeering activity. *See Black*, 619 F. Supp. 3d at 348. A RICO conspiracy requires: (1) an agreement to join the

conspiracy; (2) acts taken by each co-conspirator in furtherance of the conspiracy; and (3) knowing participation in that agreement. Allegations of parallel conduct, routine business practices, or generalized assertions of coordination are not sufficient. *See Twombly*, 550 U.S. at 557 ("[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"); *4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014) (dismissing RICO claim where plaintiffs alleged no facts to show a specific agreement or "meeting of the minds").

The Complaint utterly fails to adequately allege any facts suggesting that the Doctor Defendants either entered into an agreement with one another or with the Law Firm Defendants in order to further their conspiratorial goals in the Alleged Fraud Scheme. The Complaint's sole allegation—that "Defendants did unlawfully, knowingly, and intentionally combine, conspire, and agree together with each other, and with others whose names are known or unknown, to conduct and participate, directly and/or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity set forth herein" (Complaint ¶334) – is entirely conclusory. It merely recites the elements of a conspiracy without identifying who agreed with whom, when or where any agreement was made, how it was formed, or whether the participants shared knowledge of the alleged racketeering conduct.

Courts routinely reject such conclusory and unfounded allegations. *See Campos v. Lavinsky*, No. 22-CV-1278 (KAM), 2022 WL 16950054, at *3 (E.D.N.Y. Nov. 14, 2022) ("a RICO conspiracy claim will be dismissed where the plaintiff alleges no facts to show specifically that the defendants had any meeting of the minds"); *F.D. Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373–74 (E.D.N.Y. 2002) (rejecting generic allegations that each defendant agreed to commit multiple predicate acts); *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 291 (S.D.N.Y. 2012)

("[b]road allegations of conspiracy are insufficient; the plaintiff must provide some factual basis supporting a meeting of the minds"). Without the allegation that the Gerling Defendants knowingly entered a conspiratorial agreement, Uber's conspiracy claim fails.

## IV.    Uber's Unjust Enrichment Claim Fails As It Is Duplicative of Its Fraud Claims

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). The doctrine applies only in "unusual situations" where no contract or recognized tort applies, but equity imposes restitution. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *Nachman v. Tesla, Inc.*, No. 22-cv-5976, 2023 WL 6385772, at *4 (E.D.N.Y. Sept. 30, 2023). Unjust enrichment claims cannot duplicate a tort or contract claim. *See Corsello* at 790-791.

Here, Uber's unjust enrichment claim rests on the same conduct underlying its RICO and fraud claims, that the Gerling Defendants submitted false medical opinion, diagnoses, prognoses, and treatment to facilitate the alleged fraud. Even Uber's alleged harm (increased legal expense) cannot be properly asserted, as stated by this Court in *Subin* (*supra*), since such injuries are too remote to satisfy RICO's proximate cause requirement. (*Id.* at 18-19). Moreover, Uber fails to distinguish its unjust enrichment claim from its own fraud claim. Lastly, As the Court of Appeals explained in *Corsello*, "[t]o the extent that those claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' [fraud] claims are defective, an unjust enrichment claim cannot remedy the defects." 18 N.Y.3d at 791.

## V.    The *Noerr-Pennington* Doctrine Requires Dismissal

The Gerling Defendants incorporate the arguments set forth in Lavelle and Banilov's Motion to Dismiss. See Lavelle and Banilov's Motion to Dismiss at 32.

**<u>CONCLUSION</u>**

For the foregoing reasons, and those set forth in the memoranda of law submitted by their co-defendants to the extent applicable, the Gerling Defendants respectfully request that the Court dismiss all claims asserted against them in the Complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York            PIERCE & KWOK LLP
      September 15, 2025

By: ___*/s/ Aaron H. Pierce*_____
    Aaron H. Pierce
    Pierce & Kwok LLP
    299 Broadway, Suite 1405
    New York, NY 10007
    (212) 882-1752
    aaron.pierce@piercekwok.com

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record hereby certifies pursuant to Rule 17 of Section 202.70(g) of the Uniform Rules for the Supreme Court that the total number of words in this memorandum of law, exclusive of the caption, table of contents, table of authorities, signature block, and this Statement is 9,319 words.

Dated:  New York, New York
        September 15, 2025

                                   _/s/ Aaron H. Pierce___
                                   Aaron H. Pierce
                                   Pierce & Kwok LLP
                                   299 Broadway, Suite 1405
                                   New York, NY 10007
                                   (212) 882-1752
                                   aaron.pierce@piercekwok.com